Christopher Fallon (SBN 234685)
  *cfallon@glancylaw.com*
GLANCY PRONGAY & MURRAY LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Attorneys for Plaintiff*

[Additional Counsel on Signature Page]

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN HARWOOD, Derivatively on Behalf of Nominal Defendant FRANKLIN WIRELESS CORP., <br><br> Plaintiff, <br><br> v. <br><br> OC KIM, DAVID BROWN, GARY NELSON, JOON WON JYOUNG, JONATHAN CHEE, HEIDY CHOW AND KRISTINA KIM, <br><br> Defendants, <br><br> and <br><br> FRANKLIN WIRELESS CORP., a Nevada Corporation, <br><br> Nominal Defendant, | Case No. **'21 CV 1837 JAH DEB** <br><br> **VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT** <br><br><br> **JURY TRIAL DEMANDED** |

Plaintiff Stephen Harwood ("Plaintiff"), by and through his undersigned attorneys, brings this derivative complaint for the benefit of nominal defendant, Franklin Wireless Corp. ("Franklin" or the "Company"), against certain members of its Board of Directors (the "Board") and certain of its executive officers seeking to remedy certain Defendants' breaches of fiduciary duties, and violations of §14(a) of the Securities Exchange Act of 1934 (the "Exchange Act"). Plaintiff's allegations are based upon his personal knowledge as to himself and his own acts, and upon information and belief, developed from the investigation and analysis by Plaintiff's counsel, including a review of publicly available information, including filings by Franklin with the U.S. Securities and Exchange Commission ("SEC"), press releases, news reports, analyst reports, investor conference transcripts, publicly available filings in lawsuits, and matters of public record.

## NATURE OF THE ACTION AND OVERVIEW

1. Franklin claims it is a leading provider of intelligent wireless solutions such as mobile hotspots, routers, trackers, and other devices.

2. On April 1, 2021, Franklin stated that it "ha[d] been notified of reports of battery issues in some of its wireless hotspot devices." The Company also stated it was "working with its battery and device manufacturing partners and carrier customer to determine the cause and extent of the problem."

3. On April 8, 2021, CNBC reported that Verizon was "recalling 2.5 million hotspot devices after discovering that the lithium ion battery can overheat, creating a fire and burning hazard." It was also reported that the "recall impacts Ellipsis Jetpack mobile hotspots imported by Franklin Wireless Corp and sold between April 2017 and March 2021."

4. On April 9, 2021, Franklin revealed that its customer Verizon Wireless "issued a voluntary recall of its Jetpack Hotspot devices imported by Franklin." The Company stated that "[a]t this time, fewer than 20 reports of trouble have been received with over 2 million devices in [sic] sold over the last three and a half years."

1

5. On this news, the Company's share price fell $6.89 over two days, or approximately 34%, to close at $13.26 per share on April 9, 2021, on unusually heavy trading volume.

6. These revelations precipitated the filing of a securities class action in this District against Franklin and certain of Defendants, *Ali v. Franklin Wireless Corp.*, et al., Case No. 21-CV-0687 AJB MSB (the "Securities Class Action").

7. At least half of Franklin's current Board is not disinterested and independent and/or faces a substantial likelihood of liability in connection with the wrongdoing detailed herein.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 in that this Complaint states a federal question: violations of Sections 14(a) of the Securities Exchange Act of 1934. This Court also has jurisdiction over this action pursuant to 28 U.S.C. §1332(a)(1) as complete diversity exists between Plaintiff and each defendant, and the amount in controversy exceeds $75,000. This Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367(a). This action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have.

9. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1401 because a substantial portion of the transactions and wrongs complained of herein occurred in this District, and the Individual Defendants have received substantial compensation in this district by engaging in numerous activities that had an effect in this District.

## PARTIES

**Plaintiff**

10. Plaintiff Stephen Harwood is a resident of Arizona and purchased shares of Franklin on June 15, 1999 and has continuously owned his Franklin stock since that date.

**Nominal Defendant**

11.     Defendant Franklin is incorporated under the laws of Nevada with its principal executive offices located in San Diego, California. Franklin's common stock trades on the NASDAQ exchange under the symbol "FKWL."

**Defendants**

12.     Defendant OC Kim ("Kim") resides in California and has served as the Company's President, Secretary, and a director since September 2003. Kim also served as the Company's Acting Chief Financial Officer from April 2018 through March 2021.

13.     Defendant David Brown ("Brown") resides in California and has served as the Company's Acting Chief Financial Officer ("CFO") since March 2021.

14.     Defendant Gary Nelson ("Nelson") resides in California and has served as the Company's Chairman and director since September 2003. Nelson is a member of the Audit Committee and Chair of the Compensation Committee.

15.     Defendant Joon Won Jyoung ("Jyoung") resides in New York and served as a director of the Company from September 2009 through January 2021.

16.     Defendant Johnathan Chee ("Chee") resides in Illinois and has served as a director of the Company since September 2009 and is a member of the Compensation Committee and was a member of the Audit Committee at relevant times.

17.     Defendant Heidy Chow ("Chow") resides in California and has served as a director of the Company since December 2019 and is the Chair of the Audit Committee.

18.     Defendant Kristina Kim ("Kristina Kim") resides in California and has served as a director of the Company since January 2021 and is a member of the Audit Committee.

19.     Defendants Kim, Nelson, Jyoung, Chee, and Chow are referred to collectively as the "Proxy Defendants."

3

20.     Defendants Kim, Brown, Nelson, Jyoung, Chee, Chow, and Kristina Kim are referred to collectively as the "Individual Defendants."

### DUTIES OF THE INDIVIDUAL DEFENDANTS

21.     By reason of their positions as officers, directors, and/or fiduciaries of Franklin and because of their ability to control the business and corporate affairs of Franklin, at all relevant times, the Individual Defendants owed Franklin and its shareholders fiduciary obligations of good faith, loyalty, and candor, and were required to use their utmost ability to control and manage Franklin in a fair, just, honest, and equitable manner. The Individual Defendants were required to act in furtherance of the best interests of Franklin and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit. Each director and officer of the Company owes to Franklin and its shareholders a fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.

22.     The Individual Defendants, because of their positions of control and authority as directors and/or officers of Franklin, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein. Because of their advisory, executive, managerial, and directorial positions with Franklin, each of the Individual Defendants had knowledge of material non-public information regarding the Company.

23.     To discharge their duties, the officers and directors of Franklin were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the Company. By virtue of such duties, the officers and directors of Franklin were required to, among other things:

      a.  Exercise good faith to ensure that the affairs of the Company were conducted in an efficient, business-like manner so as to make it

4

possible to provide the highest quality performance of the business;

    b.  Exercise good faith to ensure that the Company was operated in a diligent, honest, and prudent manner and complied with all applicable federal and state laws, rules, regulations and requirements, and all contractual obligations, including acting only within the scope of its legal authority;

    c.  Exercise good faith to ensure that the Company's communications with the public and with shareholders are made with due candor in a timely and complete fashion; and

    d.  When put on notice of problems with the Company's business practices and operations, exercise good faith in taking appropriate action to correct the misconduct and prevent its recurrence.

24.    On November 19, 2020, the Individual Defendants caused the Company to file a Proxy with the SEC on (the "2020 Proxy") which stated, "The Company's Audit Committee is responsible for retaining, evaluating and, if appropriate, recommending the termination of the Company's independent auditors. The Audit Committee assists the Board in oversight of (1) the integrity of the Company's financial statements, (2) the Company's independent auditor's qualifications and independence, and (3) the performance of the independent auditors." It further noted that "The Audit Committee recommended to the Board of Directors that the audited financial statements be included in the Company's Annual Report on Form 10-K for the fiscal year ended June 30, 2020 filed with the Securities and Exchange Commission."

25.    The 2020 Proxy represented that the "Audit Committee's charter is available on the Company's website at www.franklinwireless.com;" however, no such charter exists on the Company's website, nor has it been filed with the SEC or published elsewhere.

## SUBSTANTIVE ALLEGATIONS

### Background

26.     Franklin purports to be a leading provider of intelligent wireless solutions such as mobile hotspots, routers, trackers, and other devices. Its products are generally marketed and sold directly to wireless operators, and indirectly through strategic partners and distributors. The Company's customer base extends primarily from North America to the Caribbean and South America and Asia.

### The Individual Defendants Caused Franklin to Issue Misleading Statements

27.     In November 2020, Kim, Nelson, Jyoung, Chee and Chow issued the 2020 Proxy soliciting stockholder votes in advance of Franklin's annual meeting to be held December 22, 2020. In the 2020 Proxy, the Proxy Defendants solicited stockholder votes in favor of five management proposals, including amongst others: (i) the election of directors; and (ii) the approval of the 2020 Franklin Wireless Corp. Employee Stock Option Plan (the "2020 Stock Option Plan").

28.     The 2020 Proxy disclosed that the Board had determined that Nelson, Chee, and Chow met the NASDAQ Listing Standards for the independence of audit committee members.  Kim and Jyoung, who were on the Board at the time, were therefore not determined to be independent directors.

29.     Regarding corporate governance and risk oversight, the 2020 Proxy stated:

> The Board of Directors oversees our business and affairs and monitors the performance of management…. The directors keep themselves informed through discussions with the President and other key executives, visits to the Company's facilities, by reading the reports and other materials that we send them and by participating in Board and committee meetings.

30.     Moreover, the 2020 Proxy stated that Nelson, Chee and Chow served on the Audit Committee. Regarding the Audit Committee's responsibilities, the 2020 Proxy stated, in relevant part:

6

The Audit Committee is responsible for retaining, evaluating and, if appropriate, recommending the termination of the Company's independent auditors. The Audit Committee assists the Board in oversight of (1) the integrity of the Company's financial statements, (2) the Company's independent auditor's qualifications and independence, and (3) the performance of the independent auditors. In addition, the Committee renders its report for inclusion in the Company's annual proxy statement. …

The Audit Committee has the authority to obtain advice and assistance from outside legal, accounting or other advisors as the Audit Committee deems necessary to carry out its duties. During fiscal 2020, the Audit Committee met four times.

31.     Regarding director compensation, the 2020 Proxy told stockholders, "Each director is compensated a base maximum of $10,000 annually, which is prorated based upon board meeting attendance. Incentive bonuses may be granted based on company performance.… Members of the Board who are also employees of the Company receive no compensation for their services as a director." For the fiscal year ended June 30, 2020, Nelson earned $12,500, Chee earned $12,500, Chow earned $7,500, Chung earned $5,000, and Jyoung earned $0.[1] None of the directors were granted stock options in 2020.

32.     In addition to this compensation, the 2020 Proxy solicited stockholder approval of the 2020 Stock Option Plan under which up to 800,000 shares of incentive and non-qualified options could be granted to employees, directors and certain consultants. Under the 2020 Stock Option Plan, options could be granted at not less than the fair market value on the date of grant. Restricted stock could also be granted under the 2020 Stock Option Plan. If approved, the number of shares reserved for issuance under the 2020 Stock Option Plan would represent 6.9% of the total number of shares outstanding as of November 16, 2020.

---

[1] The 2020 Proxy indicated that Jyoung had not participated in any of the Company's board meetings during the preceding year.

7

2566c3e94525776b

33.     The 2020 Proxy was materially misleading for the following reasons: (i) it misrepresented the actual activities of the Board, as well as the Audit Committee, with respect to risk management and oversight while soliciting votes to reelect and compensate directors who were breaching their fiduciary duties; and (ii) it incorporated by reference the misleading Form 10-K discussed below. As alleged herein, the Board had caused Franklin to issue materially misleading statements which failed to disclose that Franklin's hotspot devices suffered from battery issues, including overheating, which created a fire hazard, that as a result, it was reasonably likely that the Company's customers would recall Franklin's devices and Franklin would suffer reputational and financial harm.  Due to the foregoing, positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis. A reasonable shareholder would have found the truth to be material when deciding whether to vote for or against these proposals.

34.     On December 23, 2020, the Company filed with the SEC a Form 8-K disclosing the results from the votes on the proposals contained in the 2020 Proxy. In particular: (i) Kim, Nelson, Jyoung, Chee, and Chow were reelected to terms as directors; and (ii) the 2020 Stock Option Plan was approved by stockholders. The reelection of Kim, Nelson, Jyoung, Chee and Chow and the approval of the 2020 Stock Option Plan based on the misleading statements contained in the 2020 Proxy and other public filings was a fundamental link in these directors' continued breaches of fiduciary duties and their continued enrichment at the expense of the Company's unaffiliated stockholders.

35.     In connection with the Company's solicitation of the 2020 Proxy, to allow shareholders to make "an informed decision," Franklin sent shareholders its Annual Report of Form 10-K for the fiscal year ended June 30, 2020, which was also

filed with the SEC on September 17, 2020 (the "2020 10-K").[2] In relevant part, Franklin stated that its "current or future products and services may fail to function properly, and if our products and services do not achieve and sustain market acceptance, our business, results of operations and profitability may suffer." Furthermore, the Company stated:

> THE LOSS OF ANY OF OUR MATERIAL CUSTOMERS COULD ADVERSELY AFFECT OUR REVENUES AND PROFITABILITY, AND THEREFORE SHAREHOLDER VALUE. We depend on a small number of customers for a significant portion of our revenues. For the year ended June 30, 2020, net revenues from our two largest customers represented 46% and 36% of our consolidated net sales, respectively. We have a written agreement with each of these customers that governs the sale of products to them, but the agreements do not obligate them to purchase any quantity of products from us. If these customers were to reduce their business with us, our revenues and profitability could materially decline.

36.     The above statements were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, they failed to disclose to investors: (i) that Franklin's hotspot devices suffered from battery issues, including overheating, which created a fire hazard; (ii) that, as a result, it was reasonably likely that the Company's customers would recall Franklin's devices; (iii) that, as a result, Franklin would suffer reputational harm; and (iv) that, as a result of the foregoing, presented a materially misleading impression of Franklin's risk profile and positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

**The Truth Begins to Emerge**

37.     On April 1, 2021, the Company stated that it "ha[d] been notified of

---

[2] On September 18, 2020, the Company filed an amendment to the 2020 10-K to include an exhibit titled "Description of Securities," which had been omitted from the original filing. The 2020 10-K was not otherwise modified by the amendment.

reports of battery issues in some of its wireless hotspot device." Franklin also claimed it was "working with its battery and device manufacturing partners and carrier customer to determine the cause and extent of the problem."

38.     On this news, the Company's share price fell $0.35, or 1.65%, to close at $20.77 per share on April 5, 2021, the next trading session, on unusually heavy trading volume.

39.     On April 8, 2021, it was reported that Verizon Wireless was recalling certain hotspot devices. CNBC stated that Verizon was "recalling 2.5 million hotspot devices after discovering that the lithium ion battery can overheat, creating a fire and burning hazard." The recall reportedly "impact[ed] Ellipsis Jetpack mobile hotspots imported by Franklin Wireless Corp and sold between April 2017 and March 2021."

40.     On this news, the Company's share price fell $2.82, or 14%, to close at $17.33 per share on April 8, 2021, on unusually heavy trading volume.

41.     On April 9, 2021, Franklin announced that Verizon Wireless "issued a voluntary recall of its Jetpack Hotspot devices imported by Franklin." The Company claimed that "[a]t this time, fewer than 20 report of trouble have been received with over 2 million devices in [sic] sold over the last three and a half years."

42.     On this news, the Company's share price fell $6.89 over two days, or approximately 34%, to close at $13.26 per share on April 9, 2021, on unusually heavy trading volume.

## DAMAGES TO THE COMPANY

43.     As a direct and proximate result of the Individual Defendants' conduct, Franklin has been seriously harmed and will continue to be. Such harm includes, but is not limited to:

        a.  Legal fees incurred in connection with the Securities Class Action;

        b.  Any funds paid to settle the Securities Class Action;

        c.  Equity issued as a result of the vote solicited in the 2020 Proxy; and

10

      d. Costs incurred from compensation and benefits paid to the Individual Defendants who have breached their duties to Franklin.

44.    In addition, Franklin's business, goodwill, and reputation with its business partners, regulators, and shareholders have been gravely impaired. The Company still has not fully admitted the nature of its false statements and the true condition of its business. The credibility and motives of management are now in serious doubt.

45.    The actions complained of herein have irreparably damaged Franklin's corporate image and goodwill. For at least the foreseeable future, Franklin will suffer from what is known as the "liar's discount," a term applied to the stocks of companies who have been implicated in illegal behavior and have misled the investing public, such that Franklin's ability to raise equity capital or debt on favorable terms in the future is now impaired.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

46.    Plaintiff brings this action derivatively in the right and for the benefit of Franklin to redress injuries suffered, and to be suffered, by Franklin as a direct result of breaches of fiduciary duty by the Individual Defendants and contribution for violations of Section 14(a) of the Exchange Act. Franklin is named as a nominal defendant solely in a derivative capacity. This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

47.    Plaintiff will adequately and fairly represent the interests of Franklin in enforcing and prosecuting its rights.

48.    Plaintiff has continuously been a shareholder of Franklin at times relevant to the wrongdoing complained of and is a current Franklin shareholder.

49.    When this action was filed, Franklin's Board of Directors consisted of defendants Kim, Nelson, Chee, Chow, and Kristina Kim. Plaintiff did not make any demand on the Board to institute this action because such a demand would be a futile, wasteful, and useless act, as set forth below.

11

50.     Kim is the Company's Chief Executive Officer, Secretary, and a director and therefore is not independent. As an employee, Kim derives substantially all of his income from his employment with Franklin, thus could not disinterestedly consider a demand for action that might require him to sue the directors that control his continued employment and/or fellow members of management with whom he works on a day-to-day basis. Moreover, as CEO and as alleged herein, Kim signed the materially misleading statements in the 2020 10-K and is named as a defendant in the Securities Class Action. As a result, Kim would be interested in a demand regarding his own wrongdoing and demand is futile as to him.

51.     In addition to Kim, Nelson, Chee and Chow signed the 2020 10-K which contained the misleading statements at issue, and thus could not disinterestedly consider a demand for action.  As a result, demand is excused as to Nelson, Chee, and Chow, as it would be futile.

52.     Furthermore, Nelson, Chee, and Chow also served as members of the Audit Committee at relevant times, as such they are responsible for the integrity of Franklin's financial statements. In their capacities as Audit Committee members, Nelson, Chee, and Chow reviewed and approved the risk disclosures, allowing the materially misleading statements to be disseminated in Franklin's SEC filings and other disclosures. Thus Nelson, Chee, and Chow have breached their fiduciary duties and are not disinterested, and demand is excused as to them.

53.     NASDAQ Rule 5605(c)(1) requires each company to certify that it has adopted a formal written audit committee charter and that the audit committee will review and reassess the adequacy of the formal written charter on an annual basis. The Rule states that the charter must specify:

> (A) the scope of the audit committee's responsibilities, and how it carries out those responsibilities, including structure, processes and membership requirements;

(B) the audit committee's responsibility for ensuring its receipt from the outside auditors of a formal written statement delineating all relationships between the auditor and the Company, actively engaging in a dialogue with the auditor with respect to any disclosed relationships or services that may impact the objectivity and independence of the auditor and for taking, or recommending that the full board take, appropriate action to oversee the independence of the outside auditor;

(C) the committee's purpose of overseeing the accounting and financial reporting processes of the Company and the audits of the financial statements of the Company; and

(D) the specific audit committee responsibilities and authority set forth in Rule 5605(c)(3).

54.     In addition, SEC regulations (RIN 3235-AH83) require "that companies disclose in their proxy statements whether their audit committee is governed by a charter, and if so, include a copy of the charter as an appendix to the proxy statement at least once every three years." The Commission stated rationale was that "audit committees that have their responsibilities set forth in a written charter are more likely to play an effective role in overseeing the company's financial reports."

55.     Franklin stated in its prior proxy statements filed November 9, 2018 and November 1, 2016 state that "The Audit Committee has no charter,"[3] thus it failed to comply with NASDAQ listing requirements. The Company's 2020 Proxy claimed "[t]he Audit Committee's Charter is available at its website www.franklinwireless.com," but did not attach it to the 2020 Proxy, nor was it available on its website[4] as the Company claimed, and thus failed to comply with SEC regulations. It is reasonable to infer that the Audit Committee still has no charter and has failed to disclose its structure for managing and disclosing risks. Therefore, the Company lacks functioning corporate governance and Nelson, Chee, Chow, and

---

[3] The Company did not file a proxy statement in 2017 or 2019.

[4] www.franklinwireless.com, last accessed October 29, 2021.

13

Kristina Kim faces a substantial likelihood of liability in connection with the wrongdoing detailed herein.  As such, demand is excused as to Nelson, Chee, Chow, and Kristina Kim as it would be futile.

56.   Demand is also excused as to Nelson for the additional reason that he has served as Chairman and director of Franklin's board since September 2003 and was an early investor in the Company, as such it would be futile.

57.   The entire Board could not disinterestedly consider a demand to take action in connection with the misleading 2020 Proxy. These directors issued the 2020 Proxy knowing or recklessly ignoring that the representations made in Franklin's public statements were misleading with respect to the battery issues with Franklin's hotspot devices, including overheating which created a fire hazard, making a recall reasonably likely, which would cause reputational harm, and they did not disclose these same prior to the issuance of the 2020 Proxy or the shareholder vote on December 22, 2020. Had these directors truthfully and completely revealed the misleading nature of the Company's public statements, Kim, Nelson, Jyoung, Chee, and Chow would not have been reelected as directors, nor would they have had the ability to subsequently replace Jyoung with Kristina Kim when Jyoung resigned in January 2021, and the 2020 Stock Option Plan would not have been approved. As a result, Kim, Nelson, Jyoung, Chee, and Chow would be interested in a demand regarding the misleading 2020 Proxy statement, and demand is excused as to them on that basis as well.

## FIRST CAUSE OF ACTION

### (Against the Individual Defendants for Breach of Fiduciary Duty)

58.   Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

59.   Each Individual Defendant owes and owed to the Company the duty to exercise candor, good faith, and loyalty in the management and administration of

1   Franklin's business and affairs, particularly with respect to issues as fundamental as
2   public disclosures.

3       60.   The Individual Defendants' conduct set forth herein was due to their
4   intentional or reckless breach of the fiduciary duties they owed to the Company. The
5   Individual Defendants intentionally or recklessly breached or disregarded their
6   fiduciary duties to protect the rights and interests of Franklin.

7       61.   In breach of their fiduciary duties owed to Franklin, the Individual
8   Defendants willfully participated in and caused the Company to expend unnecessarily
9   its corporate funds, rendering them personally liable to the Company for breaching
10   their fiduciary duties.

11       62.   In particular, the Individual Defendants knowingly or recklessly made
12   untrue statements and/or permitted the Company's public filings, disclosures, and
13   statements to misleadingly report the Company's overall prospects.

14       63.   As a direct and proximate result of the Individual Defendants' breaches
15   of their fiduciary obligations, Franklin has sustained and continues to sustain
16   significant damages. Including direct monetary damages, exposure to liability from
17   securities litigation and a loss of goodwill in the capital markets. As a result of the
18   misconduct alleged herein, Individual Defendants are liable to the Company.

19   **SECOND CAUSE OF ACTION**
20   **(Derivative Claim for Violations of Section 14(a) of the Exchange Act and SEC
    Rule 14a-9 Promulgated Thereunder Against the Proxy Defendants)**

21       64.   Plaintiff incorporates by reference and realleges each and every
22   allegation contained above, as though fully set forth herein.

23       65.   This Count is asserted on behalf of the Company against the Proxy
24   Defendants for violations of Section 14(a) of the Exchange Act, 15 U.S.C. § 78j(b)
25   and Rule 14ab-9 promulgated thereunder, 17 C.F.R. § 240.14a-9.

26       66.   Rule 14a-9 provides that no proxy statement shall contain "any
27   statement which, at the time and in light of the circumstances under which it is made,
28

is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9. Specifically, the 2020 Proxy statement filed on November 19, 2020 violated § 14(a) and Rule 14a-9 because: (i) it misrepresented the actual activities of the Board, as well as the Audit Committee, with respect to risk management and oversight while soliciting votes to reelect and compensate directors who were breaching their fiduciary duties; (ii) it failed to disclose that each of the non-employee directors were interested in their own grants of discretionary compensation; and (iii) it incorporated the materially misleading statements in the 2020 10-K.

67.    In the exercise of reasonable care, the Proxy Defendants should have known that the statements contained in the 2020 Proxy were materially false and misleading.

68.    The misrepresentations and omissions in 2020 Proxy were material to Company shareholders in voting on the 2020 Proxy. The 2020 Proxy solicited shareholder votes for, amongst other items: i) the election of directors; and (ii) the approval of the 2020 Stock Option Plan.

69.    The Company was damaged as a result of the Proxy Defendants' material misrepresentations and omissions in the 2020 Proxy.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of Franklin, demands judgment as follows:

A.    Declaring that Plaintiff may maintain this action on behalf of Franklin and that Plaintiff is an adequate representative of the Company;

B.    Against all of the Individual Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the Individual Defendants' breaches of fiduciary duties, waste of corporate assets, and unjust enrichment;

1       C.     Declaring that the Individual Defendants have breached their fiduciary

2 duties to Franklin;

3       D.     Directing Franklin to take all necessary actions to reform and improve

4 its corporate governance and internal procedures to comply with applicable laws and

5 to protect Franklin and its stockholders from a repeat of the damaging events

6 described herein, including, but not limited to, putting forward for stockholder vote,

7 resolutions for amendments to the Company's Bylaws or Articles of Incorporation

8 and taking such other action as may be necessary to place before stockholders for a

9 vote of the following corporate governance policies:

10       1.     a proposal to strengthen the Company's controls over financial reporting;

11       2.     a proposal to strengthen the Board's supervision of operations and

12 develop and implement procedures for greater stockholder input into the policies and

13 guidelines of the Board;

14       3.     a proposal to strengthen Franklin's oversight of its disclosure

15 procedures;

16       4.     a provision to control insider transactions; and

17       5.     a provision to permit the stockholders of Franklin to nominate at least

18 three candidates for election to the Board;

19       E.     Extraordinary equitable and/or injunctive relief as permitted by law,

20 equity, and state statutory provisions sued hereunder, including attaching,

21 impounding, imposing a constructive trust on, or otherwise restricting the proceeds of

22 Individual Defendants' trading activities or their other assets so as to assure that

23 Plaintiff on behalf of Franklin has an effective remedy;

24       F.     Awarding to Franklin restitution from Individual Defendants, and each

25 of them, and ordering disgorgement of all profits, benefits, and other compensation

26 obtained by the Individual Defendants;

27

28

G.    Awarding to Plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

H.    Granting such other and further relief as the Court deems just and proper.

## **JURY TRIAL DEMANDED**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff hereby demands a trial by jury.

DATED: October 29, 2021      **GLANCY PRONGAY & MURRAY LLP**

By: _/s/ Christopher Fallon_
Christopher Fallon
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: info@glancylaw.com

Benjamin I. Sachs-Michaels
712 Fifth Avenue, 31st Floor
New York, NY 10019
Telephone: (212) 935-7400
Email: bsachsmichaels@glancylaw.com

*Attorneys for Plaintiff*

18

## **VERIFICATION**

I, Stephen Harwood, do hereby verify that I am a holder of common stock of Franklin Wireless Corp., and was a holder of such common stock at the time of the wrongs complained of in the foregoing Verified Shareholder Derivative Complaint ("Complaint"). I have authorized the filing of the Complaint. I have reviewed the Complaint. All of the averments contained in the Complaint regarding me are true and correct upon my personal knowledge and, with respect to the remainder of the averments, are true and correct to the best of my knowledge, information, and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Date: 10/26/2021

_____
Stephen Harwood