UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re FRANKLIN WIRELESS CORP. DERIVATIVE LITIGATION | Case No.:  21-cv-1837-AJB-MSB<br><br>**ORDER:**<br><br>**(1) DENYING DEFENDANTS' MOTION FOR SUMMARY ADJUDICATION AND**<br><br>**(2) GRANTING DEFENDANTS' MOTION TO EXCLUDE PLAINTIFFS' EXPERT MR. BENJAMIN P. EDWARDS**<br><br>(Doc. Nos. 53, 54) |

Before the Court are Defendants' motion for summary adjudication and motion to exclude Plaintiffs' expert. (Doc. Nos. 53, 54.) The motions are fully briefed. (Doc. Nos. 56, 59, 62, 63, 87.) For the reasons set forth below, the Court **DENIES** the motion for summary adjudication, and **GRANTS** the motion to exclude Plaintiffs' expert.

1

## I.  BACKGROUND[1]

Debra Martin ("Martin") and Stephen Harwood ("Harwood") (collectively, "Plaintiffs") are shareholders of Franklin Wireless Corp. ("Franklin"), a provider of wireless solutions including mobile hotspots, routers, trackers, and other devices. Franklin's products are marketed and sold directly to wireless operators and indirectly through strategic partners and distributors.

Relevant here is Franklin's MHS900L mobile hotspot device called the Ellipsis Jetpack ("Jetpack"), which contained a lithium-ion battery. The device was sold to Verizon. Verizon put its name on the device and offered it to its customers to provide wireless Internet access for devices, including laptops, tablets, and smart phones. During the relevant time, 2017 to 2021, one of Franklin's largest customers was Verizon.

In May 2019, Franklin's Chief Executive Officer, OC Kim, stated in a letter to the United States Consumer Product Safety Commission ("CPSC"): "There have been zero incidents lifetime to date for any of our products causing any physical/bodily or property damage," that the Jetpacks "are compliant with Verizon Power Management Requirements," and that the "defect rate is less than 0.5%." In its Annual Report on Form 10-K filed on September 13, 2022, Franklin stated that "Verizon first advised us of one alleged Jetpack device failure at the end of February 2021."

On March 31, 2021, Verizon sent a letter to the CPSC concerning the recall of Franklin's Jetpack devices following consumer reports of overheating and exploding devices due to problems with the lithium-ion battery in the devices. On April 8, 2021, the CPSC published a notice of Verizon's recall of 2.5 million Franklin Jetpacks sold between April 2017 and March 2021. On April 22, 2021, Verizon sent Franklin a tender of defense and demand for indemnification.

---

[1] Unless otherwise cited, the following background is gleaned from the parties' agreed-upon statement of the case set forth in their proposed pre-trial order and joint stipulation of facts. (Doc. Nos. 82, 82-1.)

21-cv-1837-AJB-MSB

Plaintiffs are suing the following individuals who serve, or had served, as officers and directors of Franklin: OC Kim, (CEO and Director); Yun J. Lee (Chief Operating Officer); David Brown (Chief Financial Officer), Gary Nelson (Director), Kristina Kim (Director), Johnathan Chee (Director), Joon Won Jyoung (Director), and Heidy Chow (Director) (collectively, "Defendants"). Plaintiffs bring this action derivatively in the right and for the benefit of Franklin to redress injuries suffered by Franklin and its shareholders, as a result of alleged: (1) breaches of fiduciary duty as to all Defendants; (2) violations of Section 14(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b) and Rule 14ab-9 promulgated thereunder, 17 C.F.R. § 240.14a-9, as to all Defendants; and (3) unjust enrichment as to OC Kim. (Doc. No. 1, Harwood Compl. and Martin Compl.)[2]

## II. MOTION FOR SUMMARY ADJUDICATION

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 if the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).[3] A fact is material when, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* The court must review the record as a whole and draw all reasonable inferences in favor of the non-moving party. *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003). However, unsupported conjecture or conclusory statements are insufficient to defeat summary judgment. *Id.*; *Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1103 (9th Cir. 2008).

---

[2] This is a consolidated case, comprising of two complaints, one filed by Stephen Harwood (Doc. No. 1 in lead case, 21-cv-1837) and another filed by Debra Martin (Doc. No. 1 in Case No. 21-cv-2091). Both complaints raise the breach of fiduciary duties claim, but only Harwood brings the Section 14(a) claim, and only Martins brings the unjust enrichment claim.

[3] Internal quotations, citations, and alterations are omitted from the cases cited in this Order unless otherwise indicated.

21-cv-1837-AJB-MSB

The party seeking summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. Once the moving party has satisfied this burden, the nonmoving party cannot rest on the mere allegations or denials of his pleading, but must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file," show that a genuine issue of disputed fact remains. *Id*. at 324. The opposing party cannot rest solely on conclusory allegations of fact or law to avoid summary judgment. *See Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986). Instead, the non-movant must designate which specific facts show that there is a genuine issue for trial. *See Anderson*, 477 U.S. at 256. "The district court need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001).

Here, Defendants seek summary adjudication in their favor, arguing that Plaintiffs cannot establish: (1) demand futility, (2) a breach of fiduciary duty, (3) a violation of Section 14(a) of the Exchange Act, or (4) unjust enrichment. (Doc. No. 53.) The Court discusses each in turn.

### A.   Demand Futility

"Under Federal Rule of Civil Procedure 23.1 ('Rule 23.1'), a shareholder must either demand action from the corporation's directors before filing a shareholder derivative suit, or plead with particularity the reasons why such demand would have been futile." *Arduini v. Hart,* 774 F.3d 622, 628 (9th Cir. 2014). To determine when demand would be futile, courts look to the state of incorporation. *See id.* Because Franklin is incorporated in Nevada, Nevada law governs demand futility in this case. (Doc. No. 53-1 at 1 (OC Kim Decl. stating "Franklin is a Nevada corporation headquartered in San Diego.").)

To satisfy demand futility under Nevada law, the plaintiff must show:

(1) in those cases in which the directors approved the challenged transactions, a reasonable doubt that the directors were disinterested or that the business

4

judgment rule otherwise protects the challenged decisions; or (2) in those cases in which the challenged transactions did not involve board action or the board of directors has changed since the transactions, a reasonable doubt that the board can impartially consider a demand.

*Shoen v. SAC Holding Corp.*, 137 P.3d 1171, 1184 (Nev. 2006). "Lack of director independence can be shown through allegations demonstrating that the majority is beholden to directors who would be liable." *Arduini*, 774 F.3d at 628 (quoting *In re Amerco Derivative Litig.*, 252 P.3d 681, 698 (Nev. 2011). It can also be demonstrated "through alleged facts indicating that a majority of the board members would be materially affected, either to their benefit or detriment, by a decision of the board, in a manner not shared by the corporation and the stockholders." *In re Amerco Derivative Litig.*, 252 P.3d at 698. Moreover, while "mere threats of liability" do not suffice to show interestedness, it can be found "where defendants' actions were so egregious that a substantial likelihood of director liability exists." *Shoen*, 137 P.3d at 1183–84.

### 1.    Demand Futility is a Live Issue

To begin, Plaintiffs contend that Defendants waived any arguments about demand futility because they never asserted it as an affirmative defense in their Answer or file a motion to dismiss on that basis. (Doc. No. 87 at 13.) Plaintiffs, however, cite no case law holding that demand futility is an affirmative defense that is waived if not challenged on a motion to dismiss. Without controlling authority to the contrary, the Court agrees with Defendants that Plaintiffs bear the burden to establish demand futility, and that the issue remains live for adjudication on summary judgment. *See, e.g.*, *Good v. Getty Oil Co.*, 518 A.2d 973, 974 (Del. Ch. 1986) (rejecting "the assumption that the only means of resolving the issue of demand futility is through a motion to dismiss"); *In re BGC Partners, Inc. Derivative Litig.*, No. CV 2018-0722-LWW, 2021 WL 4271788, at *5 (Del. Ch. Sept. 20, 2021) ("[T]he demand requirement's ultimate consideration does not end when the complaint is found to be sufficient.").[4]

---

[4] "Nevada courts look to Delaware law for guidance on demand futility." *Arduini*, 774 F.3d at 628.

21-cv-1837-AJB-MSB

## 2.    Plaintiffs' Demand Futility Showing

Turning to Plaintiffs' showing of demand futility showing, the Court finds there is a genuine issue of material fact regarding the Board's ability to make an impartial judgment about a litigation demand. At the time Plaintiffs' filed suit, Franklin's Board consisted of five members: OC Kim, Gary Nelson ("Nelson"), Johnathan Chee ("Chee"), Heidy Chow ("Chow"), and Kristina Kim. *See Rosenbloom v. Pyott*, 765 F.3d 1137, 1148 (9th Cir. 2014) ("Futility is gauged by the circumstances existing at the commencement of a derivative suit and concerns the board of directors sitting at the time the complaint is filed.").

OC Kim is Franklin's CEO. There is evidence that he is interested in this litigation because he faces a substantial likelihood of personal liability because he signed the alleged materially misleading statements in the 2020 Form 10-K and knew about the battery issues raised by Verizon since 2018 but chose not to inform his fellow board members. (Doc. Nos. 53-2 at 4–5, 59-11 at 2.) There is also evidence that OC Kim earned substantial compensation during the time he was aware of the battery issues. (Doc. No. 82-1 at 3.) The Court finds these circumstances support a reasonable inference that OC Kim is interested. Because the record contains evidence that OC Kim could not impartially consider a litigation demand regarding his alleged wrongdoing, the Court finds that a reasonable jury could find that demand would be futile as to OC Kim.

As to the other board members, Plaintiff has presented evidence that OC Kim exerted dominion and control over the rest of the Board. In Nelson's deposition, he described that "OC is the founder of the company and the president and CEO, and he listens to opinions . . . but ultimately he makes the decisions." (Doc. No. 59-29 at 7.) Nelson also testified that as to the battery issues, he did not believe it was his job to second-guess management, and admitted that he put "blind faith" in management. (*Id.* at 12.) He confirmed that as far as company management, OC Kim is at the top and "[t]he buck stops with OC." (*Id.* at 6.) The Court finds a jury could conclude under these circumstances "that the majority is beholden" to OC Kim, a director who would be liable.  *Arduini*, 774 F.3d at 628; *In re Amerco Derivative Litig.*, 252 P.3d at 698.

6

21-cv-1837-AJB-MSB

Additionally, the Court agrees with Plaintiffs that there is sufficient evidence from which a jury could determine that demand is futile because the directors face a substantial likelihood of personal liability based on the Boards' failure to adopt and implement a board-level reporting system concerning the key enterprise risks facing the company, and signed the allegedly misleading Annual Reports portraying the loss of business from Verizon to result from COVID-19 factors as opposed to known battery issues. Defendants counter that because the number of battery issues Verizon reported was not statistically significant, they do not amount to a key enterprise risk. Defendants' interpretation of the evidence, however, does not defeat summary judgment as the Court must draw all reasonable inferences in favor of Plaintiffs. *See Hernandez*, 343 F.3d at 1112.

Viewing the evidence in the light most favorable to Plaintiffs, the Court finds it reasonable to infer that because Verizon was one of Franklin's largest customers, Verizon's repeated reports of batteries overheating and subsequent recall was a key enterprise risk for Franklin. (Doc. Nos. 59-29 at 16 (Nelson testifying that Franklin's sale of the Jetpack to Verizon "was probably the majority of our income."); 82 at 2.) A jury could find demand to be futile as to the other board members based on evidence indicating they failed to inform themselves about the growing problems with Franklin's main product and customer, and even after Verizon's recall, failed to take any significant action to independently investigate the cause or establish a reasonable board-level oversight system to monitor such risks. Instead, they all appeared to have blindly relied on management. *See, e.g.*, *Marchand v. Barnhill*, 212 A.3d 805, 813–14 (Del. 2019) (reversing dismissal of a shareholder derivative claim where despite years of evidence of a life-threatening bacteria in the manufacturer's product, the board discussed the issue only after a recall was announced, failed to hold more frequent board meetings to receive constant updates on the problem, and "left the company's response to management.".

Nelson testified that since the recall, he has not asked management about Verizon's reports of batteries overheating and defers to their handling of the situation. (Doc. No. 59-29 at 10–12.) Chee testified that he has no knowledge of when Verizon first reported

7

battery issues to Franklin and that he does not recall whether he asked to see any reports about the battery. (Doc. No. 87-5 at 8, 9.) He also testified that he did not know whether Verizon continues to do business with Franklin, nor did he deem it important to know that. (*Id.* at 12.) Chow could not recall whether the Board has any internal controls to ensure key enterprise risks were regularly reported to the Board, nor did she remember taking any steps to evaluate Franklin's business with Verizon and any risks that may have existed to that business after the recall. (Doc. No. 87-4 at 9–11.) Kristina Kim testified that she did not recall ever discussing risks involving Verizon's business with Franklin, did not investigate potential loss of material business with Verizon (despite being on the audit committee), did not request to review any documents or reports about the battery issues, and simply trusted that management was handling the issues and informing the Board accordingly. (Doc. No. 59-3 at 3, 8, 11.)

The Court finds the above evidence, viewed in the light most favorable to Plaintiffs, could support a finding that the Board failed to make a good faith effort in exercising its duty of care, and thus breached its duty of loyalty to Franklin and the shareholders. *See Shoen*, 137 P.3d at 1178 ("the duty of care consists of an obligation to act on an informed basis; the duty of loyalty requires the board and its directors to maintain, in good faith, the corporation's and its shareholders' best interests over anyone else's interests."). Because the record contains evidence that Nelson, Chee, Chow, and Kristina Kim bear a substantial risk of personal liability for breach of fiduciary duties, the Court finds that a reasonable jury could find that demand would be futile as to them.[5] *See Marchand*, 212 A.3d at 813–14.

\* \* \*

Accordingly, based on the foregoing, the Court **DENIES** Defendants' motion for

---

[5] Indeed, Franklin's 2021 Annual Report, which was signed by each board member, indicates that the Board expected this shareholder derivative litigation to be filed and communicated its intent to "vigorously defend against these claims." (Doc. No. 59-3 at 83.) This only further undermines the Board's ability to impartially consider a litigation demand.

21-cv-1837-AJB-MSB

summary judgment based on demand futility. The Court next turns to Defendants' claim that Plaintiffs cannot prove a breach of fiduciary duties.

## B.   Breach of Fiduciary Duties

To hold directors and officers of a corporation individually liable for breach of fiduciary duty, a plaintiff must (1) rebut the business judgment rule and (2) demonstrate a breach of fiduciary duty involving intentional misconduct, fraud, or a knowing violation of the law. Nevada Revised Statutes § 78.138(7).

Defendants argue that Plaintiffs have not rebutted the business judgment rule and have failed to show a breach of fiduciary duty. The Court considers each in turn.

### 1.   Business Judgment Rule

Nevada's business judgment rule is codified at Nevada Revised Statutes ("NRS") § 78.138(3) and states, in pertinent part, that in deciding upon matters of business, directors "are presumed to act in good faith, on an informed basis and with a view to the interests of the corporation." *Wynn Resorts, Ltd. v. Eighth Jud. Dist. Ct. in & for Cnty. of Clark*, 399 P.3d 334, 342 (Nev. 2017). To determine whether a plaintiff has rebutted the business judgment rule, the court considers, not the substantive reasonableness of the business decision, but rather, "the procedural indicia of whether the directors resorted in good faith to an informed decision-making process." *Id.* at 343.

As to Nelson, Chee, Chow, and Kristina Kim, the Court finds Plaintiff has presented evidence that the business judgment rule does not apply to them. S*ee generally Aronson v. Lewis*, 473 A.2d 805, 813 (Del. 1984) ("[T]he business judgment rule operates only in the context of director action. Technically speaking, it has no role where directors have either abdicated their functions, or absent a conscious decision, failed to act."). As discussed *supra* § III.A.2, the record shows they failed to implement reasonable board-level reporting to keep themselves dutifully informed of key company risks such as the repeated reports of concern from their largest customer for three years. Even after learning of the recall, they made no requests to review documents or reports relating to the battery issues so they

9

can inform themselves. Instead, they simply trusted that OC Kim was informing them appropriately. Viewing the evidence in the light most favorable to Plaintiffs, the Court finds that the sudden news of a Verizon recall would cause a reasonably prudent board member to know that blind reliance on OC Kim's opinion and information is unwarranted. Considering the Board's lack of meaningful internal controls and these directors' failure to inform themselves and exercise due diligence, even after learning of the recall, the Court finds sufficient evidence to undermine a finding of good faith and defeat the business judgment rule here. *Cf.* NRS § 78.138(3) (presuming directors are acting in good faith, on an informed basis).

As to OC Kim, there is a genuine dispute as to whether he acted "in good faith, on an informed basis and with a view to the interests of the corporation." *Id.* The record shows that over the course of three years, OC Kim knew about: (1) Verizon's complaints about Franklin's battery overheating since 2018, (2) Franklin's former Director of Finance's concerns about the risk of losing major revenue due to the battery issues, (3) reports of Franklin's product not performing within Verizon's battery specifications and potentially trapping flammable gas, (4) Verizon's requests for third-party testing, and (5) Verizon's demand for credit for faulty devices. (Doc. Nos. 59-12 at 2–3; 59-14 at 4–5; 59-17 at 1, 3; 59-21 at 2; 59-23 at 1; 87-3 at 10–13.) Despite having this information, at no point did OC Kim inform the other board members about the battery issues until Verizon's recall was imminent. (Doc. No. 53-1, OC Kim Decl. at 4 ("Besides me, no other Board Member was advised about any "overheating" reports until just days before the CSPC recall notice in April 2021.") According to OC Kim, he exercised his business judgment "in determining there was no issue significant enough to be considered by the Franklin Board." (*Id.* at 5.)

Viewing the evidence in the light most favorable to Plaintiffs, a jury could reasonably infer that in relying only his own opinion about Verizon's mounting concerns, instead of consulting with other board members about the growing issues, OC Kim failed to resort in good faith to an informed decision-making process. That OC Kim can unilaterally deprive other board members of information about serious complaints from

21-cv-1837-AJB-MSB

one of the company's largest customers and decide how to handle Verizon's demands for independent testing and credit for faulty devices without the benefit of the Board's input, shows a lack of procedural due diligence not warranting the presumption of good faith. Accordingly, the Court finds there is a genuine issue of material fact as to whether OC Kim is protected by business judgment rule.

### 2.    Breach of Fiduciary Duty

Defendants argue that Plaintiffs' breach of fiduciary duty claim is purely conclusory and fails to demonstrate any actual breach. (Doc. No. 53 at 19.) The Court disagrees. Plaintiffs have marshalled evidence from which a reasonable jury could find that OC Kim and the other board members knowingly engaged in conduct that violated their duties of care and loyalty to the company.

For example, as discussed above, Plaintiff's evidence indicates that Nelson, Chee, Chow, and Kristina Kim abdicated their oversight responsibilities by failing to ensure that management regularly informed the Board about key risks facing the company. *See supra* § II.A.2 (discussing the Board's blind faith and deference to OC Kim). Even after discovering that one of their main products was being recalled "due to fire and burn hazards" by one of their main customers, (Doc. No. 59-6), the board members requested no information or report from OC Kim. It is reasonable to infer that as a provider of wireless solutions like the Jetpack, Franklin can only thrive if its customers are confident that its product were safe for use—especially considering their use by school-aged children. (Doc. No. 59-2 at 18.) A jury could find that a reasonably prudent person in their circumstances would be alarmed by Verizon's recall and cause the board members to question management and create a system that ensures prompt reporting of Franklin's business risks. *See Horwitz v. Sw. Forest Indus., Inc.*, 604 F. Supp. 1130, 1134 (D. Nev. 1985) ("The duty of care requires the director to exercise the care that a reasonably prudent person in a similar position would use under similar circumstances.").

Despite having cause to act and ask questions, the board members failed to meaningfully inform themselves of the situation and continued to blindly defer to, and rely

on, OC Kim to handle the matter. Indeed, Franklin's Bylaws provide that a director will "not be considered to be acting in good faith if he has knowledge concerning the matter in question that would cause such reliance to be unwarranted." (Doc. No. 59-33 at 14.)

Moreover, Defendants appear to concede that they "took no action even after they were informed of the battery issue, recall, and termination and demand for indemnity by Verizon." (Doc. No. 63 at 6.) They argue instead that "there was nothing to do at that point." (*Id.*) That determination, however, is for the jury to make. Because a reasonable jury could find that the board members breached their duty of care and loyalty by unduly deferring to OC Kim even after learning of Verizon's recall and failing to establish a reporting and monitoring system for key company risks, the Court declines to enter summary judgment on this claim.[6] *See, e.g.*, *Marchand*, 212 A.3d at 824 ("[A] corporate board must make a good faith effort to exercise its duty of care. A failure to make that effort constitutes a breach of the duty of loyalty.").

Plaintiffs also contend that OC Kim, Nelson, Chee, Chow, and Kristina Kim breached their duty of candor by signing Franklin's 2021 and 2022 Annual Reports, which fail to disclose that Franklin had lost all business from Verizon and misleadingly suggest that Franklin's material drop in revenues were due to COVID-related factors as opposed to Verizon's cancelation of orders due to issues with the Jetpacks. The record contains evidence to support Plaintiffs' contentions. (Doc. Nos. 59-3 at 14, 47–48; 59-26 at 11, 33; 59-30 at 10.) Defendants, on the other hand, assert that Verizon remains in business with Franklin but cite no evidence in support. And while Defendants argue that Verizon recalled the Jetpacks for reputational reasons (and not for issues relating to the product's quality, reliability, and safety), several reports and emails show the contrary. Defendants also do not dispute that the board members owe a duty of candor to Franklin's shareholders. Drawing all reasonable inferences from the evidence in Plaintiffs' favor, the Court finds a

---

[6] The Court notes that as to OC Kim's liability for breach of fiduciary duty, Defendants argue only that he is shielded by the business judgment rule, which the Court has already rejected for his failure to act on a good faith, informed basis in failing to seek Board input on a key enterprise risk.

reasonable jury could find that the board members breached their duty of candor in this case, and accordingly, declines to grant summary judgment on this basis.

Lastly, Defendants also argue that former board member Jyoung cannot be held liable for a breach of fiduciary duty because he resigned from the Board prior to the Verizon recall. Plaintiffs countered that his resignation is irrelevant because it is undisputed that despite Jyoung's fifteen years of being on Franklin's Board, he never attended a meeting from 2018 to 2021 and thereby completely abdicated his fiduciary obligations. (Doc. No. 87-3 at 8–9). Plaintiffs further assert that despite Jyoung's recurring absence, OC Kim, Nelson, Chow, and Chee repeatedly recommended him to shareholders for reelection—further undercutting a finding that they acted in good faith and in the best interest of the company. (Doc. No. 59-32 at 29.) Defendants did not contest Plaintiffs' assertions in reply. Because there is evidence from which a jury could find that Jyoung breached his fiduciary duties to Franklin, the Court declines to grant summary judgment in Jyoung's favor.

* * *

For the foregoing reasons, the Court finds Plaintiffs have presented evidence that there are genuine issues of material fact as to whether OC Kim, Nelson, Chee, Chow, Kristina Kim, and Jyoung breached their fiduciary duties. Accordingly, the Court **DENIES** Defendants' motion for summary judgment on this basis.[7] The Court proceeds to Defendants' claim that Plaintiffs cannot prove their claim under Section 14(a) of the Exchange Act.

### C.  Section 14(a) of the Exchange Act

As an initial matter, Defendants argue that Lee, Brown, and Kristina Kim could not be liable on Plaintiff Harwood's Section 14(a) claim. The pleadings make clear, however, that this claim is alleged only against "the Proxy Defendants" who are identified as OC Kim, Nelson, Jyoung, Chee, and Chow. (Doc. Nos. 1 at 4, 16; 87 at 27 n.16.)

---

[7] Neither Defendants' nor Plaintiff' briefs raised any specific or meaningful argument as to the dismissal of Franklin's COO and CFO, Defendants Yun J. Lee and David Brown, respectively. The Court thus deems it inappropriate to enter summary judgment as to them, on this record.

21-cv-1837-AJB-MSB

Defendants also contend that Plaintiffs cannot establish their Section 14(a) claim because there is no material misrepresentation or omission in the company's 2020 Proxy Statement or 10-K. The Court disagrees.

Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder "disallow the solicitation of a proxy by a statement that contains either (1) a false or misleading declaration of material fact, or (2) an omission of material fact that makes any portion of the statement misleading." *Desaigoudar v. Meyercord*, 223 F.3d 1020, 1022 (9th Cir. 2000); *see also* 15 U.S.C. § 78n(a); 17 C.F.R. § 240.14a–9(a). "An omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote." *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976).

The question of materiality "requires delicate assessments of the inferences a 'reasonable shareholder' would draw from a given set of facts and the significance of those inferences to him, and these assessments are peculiarly ones for the trier of fact." *TSC Indus., Inc.*, 426 U.S. at 450. As such, summary judgment "as a matter of law" on the issue of materiality is warranted only where the omissions are so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their materiality. *See id.* ("Only if the established omissions are so obviously important to an investor, that reasonable minds cannot differ on the question of materiality is the ultimate issue of materiality appropriately resolved as a matter of law by summary judgment.").

Here, viewing the evidence in the light most favorable to Plaintiffs, the Court does not find that the identified misrepresentations and omissions are so obviously unimportant to a reasonable investor that the ultimate issue of materiality may be resolved as a matter of law. *See id.* In support of the Section 14(a) claim, Plaintiffs assert that the 2020 Proxy Statement contained material misleading statements concerning the activities of the Board and omissions concerning risks to the company. Beginning with the misleading statements, Plaintiffs point to the following representations in the 2020 Proxy Statement.

21-cv-1837-AJB-MSB

- The Proxy Defendants "monitors the performance of management" and "keep themselves informed through discussions with the President and other key executives." (Doc. No. 59-32 at 16.)

- The Audit Committee "assists the Board in the oversight of . . . the integrity of the Company's financial statements." (*Id.* at 18.)

- "The Audit Committee's charter is available on the Company's website at www.franklinwireless.com." (*Id.*)

As to the first statement, Plaintiffs assert the representation is misleading because the evidence shows that the Proxy Defendants did not monitor management's performance and failed to keep themselves informed about the state of the company. This is evidenced by their lack of knowledge with respect to risks to the company's revenues due to the safety issues with the Jetpack devices that had been reported by its largest customer, Verizon, for several years without a resolution. (Doc. No. 59-29 at 12; 87 at 27 n. 17; 87-3 at 22–23.)

As to the second and third statements, Plaintiffs claim they are false or misleading because the evidence demonstrates that Chow, Nelson and Chee all sat on the Audit Committee, yet were unaware of the material risks to the company, and there was no Audit Committee charter. (Doc. No. 59-29 at 41; 87-4 at 7–8; 87-5 at 3, 8–10.) Such evidence indicates that members of the Audit Committee lacked information necessary to perform the oversight function described and that the Audit Committee lacked the formal structure and processes provided by a charter.

Based on the foregoing, the Court finds Plaintiffs have presented evidence from which it is reasonable to infer that the shareholders were, at a minimum, misled into believing that the Proxy Defendants and Audit Committee were performing and functioning as described when they were not. The Court agrees with Plaintiffs that a jury could find that these representations were important to a reasonable investor as they considered whether to re-elect the Proxy Defendants to the Board and approve the compensation rewarded through the 2020 Stock Option Plan. The Court therefore does not find these representations to be so obviously unimportant that reasonable minds could not

15

differ on whether they are material. *See TSC Indus., Inc.*, 426 U.S. at 450. Accordingly, the Court declines to grant summary judgment on this basis.

Turning to the alleged omissions, which is raised only against OC Kim, Plaintiffs contend there was a material omission in the 2020 Proxy Statement because it incorporated the company's 10-K, which warned that the loss of any material customer could adversely affect revenue but failed to disclose the below information that would allow shareholders to appreciate the magnitude of the risk.

- Verizon submitted various reports of Franklin's Jetpack overheating and exploding, some of which had resulted in property damage. (Doc. Nos. 59-19; 59-21; 87-3 at 9–12.)

- The devices were being sold to school age children. (Doc. No. 59-2 at 18.)

- The problem had not been fixed and that new incidents were being reported nearly every month for years. (Doc. Nos. 59-19; 59-27.)

- Verizon had requested that an independent third-party lab evaluate the issue and that Franklin had not complied. (Doc. Nos. 59-19 at 19–20; 59-21 at 2.)

- Unbeknownst to Verizon, Franklin implemented remedial measures to address the overheating issue, which were unsuccessful. (Doc. Nos. 59-19 at 27; 59-25; 87-2 at 12.)

- Verizon did not accept Franklin's position that the problems were the result customer misuse or fraud. (Doc. Nos. 59-12 at 2–3; 59-34.)

- The devices were Verizon branded devices which increased the reputational risk to Verizon and thus the risk of recall. (Doc. No. 59-23 at 1.)

- Verizon told Franklin that "even one [overheated] device is too many." (*Id.*)

Defendants' argument that they had no duty to disclose information concerning Verizon's issues with the Jetpack is unavailing. "[O]nce a company speaks on an issue or

21-cv-1837-AJB-MSB

topic"—here, risk to Franklin's revenue from loss of any material customer[8]— "there is a duty to tell the whole truth." *Meyer v. Jinkosolar Holdings Co.*, 761 F.3d 245, 250 (2d Cir. 2014); *In re Novatel Wireless Sec. Litig.*, 830 F. Supp. 2d 996, 1017 n.19 (S.D. Cal. 2011) ("If one speaks, he must speak the whole truth.") (quoting *Stransky v. Cummins Engine Co.*, 51 F.3d 1329, 1331 (7th Cir. 1995)).

Defendants' alternative argument that the representations are protected by the Private Securities Litigation Reform Act's safe harbor provision also fails to persuade. Specifically, Defendants claim that the allegedly false statements are covered by the statutory safe harbor because they are forward-looking statements made without actual knowledge of anything misleading. The record, however, shows that OC Kim has known of Verizon's mounting concerns over Franklin's batteries overheating, exploding, and not performing within its specification, as well as Franklin's unsuccessful attempts at identifying or fixing the problem. *See In re Cutera Sec. Litig.*, 610 F.3d 1103, 1112 (9th Cir. 2010) (noting the safe harbor provision is inapplicable where facts "create a strong inference that the defendants made the forecast(s) at issue with actual knowledge that the statement was false or misleading."). Because the risk of revenue loss from the loss of a material customer was presented in the abstract and omitted hard facts about Franklin's ability to keep Verizon as a customer, the Court finds the safe harbor provision does not apply, and that the risk statement was misleading. *See id.*; *Washtenaw Cnty. Emps. Ret.*

---

[8] The full text of the warning is as follows.

THE LOSS OF ANY OF OUR MATERIAL CUSTOMERS COULD ADVERSELY AFFECT OUR REVENUES AND PROFITABILITY, AND THEREFORE SHAREHOLDER VALUE. We depend on a small number of customers for a significant portion of our revenues. For the year ended June 30, 2020, net revenues from our two largest customers represented 46% and 36% of our consolidated net sales, respectively. We have a written agreement with each of these customers that governs the sale of products to them, but the agreements do not obligate them to purchase any quantity of products from us. If these customers were to reduce their business with us, our revenues and profitability could materially decline.

(Doc. No. 59-2 at 11.)

21-cv-1837-AJB-MSB

*Sys. v. Celera Corp.*, No. 5:10-CV-02604 EJD, 2012 WL 3835078, at *4 (N.D. Cal. Sept. 4, 2012) ("The safe harbor cannot protect cautionary statements made with superior knowledge that some of the potential perils identified have in fact been realized.").

With respect to the materiality of the omissions, it is reasonable to infer that information revealing that the company has failed to resolve years of complaints from one of its largest customers would be important to a reasonable investor. The Court therefore does not find these representations to be so obviously unimportant that reasonable minds could not differ on whether they are material. *See TSC Indus., Inc.*, 426 U.S. at 450. Accordingly, the Court declines to grant summary judgment on this basis.

* * *

For the foregoing reasons, the Court finds Plaintiffs have presented evidence showing genuine issues of material fact as to whether there are material misrepresentations and omissions in the company's 2020 Proxy Statement and 10-K. Accordingly, the Court **DENIES** Defendants' motion for summary judgment on the Section 14(a) claim.

### D.   Unjust Enrichment

Next, Defendants seek summary adjudication on Plaintiff Martin's unjust enrichment claim against OC Kim, arguing that it is duplicative of the "short-swing profits" claim recently litigated in another case, *Nosirrah Management LLC v. Franklin Wireless Corp. et al.*, Case No. 3:21-cv-01316-RSH. In *Nosirrah*, a jury entered a verdict in favor of the plaintiff and awarded $2 million in damages due to the short-swing profit misconduct alleged in the case. Defendants therefore request the Court find that Plaintiffs' unjust enrichment claim is precluded by the judgment in *Nosirrah*.

While Plaintiffs agree that the issue of short-swing profits underlying Martin's unjust enrichment claim should not be relitigated, they explain that the claim is also supported by other allegations not implicated in the *Nossirah* action, and thus should not be dismissed entirely. Indeed, in addition to the short-swing profits allegations, Martins alleged: "During the Relevant Period, Defendant OC Kim either received bonuses, stock

18

21-cv-1837-AJB-MSB

options, or similar compensation from the Company that was tied to the financial performance of the Company or received compensation that was unjust in light of the Individual Defendants' bad faith conduct." (Doc. No. 1, Martin Compl. at 45.) Plaintiffs point to evidence showing the financial benefits that O.C. Kim received that a jury could determine constitute unjust enrichment, including substantial compensation earned during the time that the undisclosed Jetpack defects existed and stock options worth $566,000 awarded in 2022 notwithstanding the alleged wrongdoing related to the recall.

The pleadings and evidence presented support Plaintiffs' position, and Defendants do not meaningfully contend otherwise. Instead, Defendants obstinately maintain—despite the plain text of Martin's complaint showing the contrary—that the entirety of the unjust enrichment claim is identical to the short-swing profits claim in *Nossirah*. As the record clearly belies Defendants' position, the Court rejects their request to find the entirety of Plaintiffs' unjust enrichment claim precluded by *Nosirrah*.

Additionally, to the extent Defendants argue that the unjust enrichment claim must be dismissed as duplicative because there are other causes of action alleged that provide restitutionary damages, the Court is not persuaded. Defendants do not cite any controlling, precedential authority to support their argument. Without such authority, the Court declines to enter summary judgment on this basis. Notably, Plaintiffs pointed out that in *Astiana v. Hain Celestial Grp., Inc*., the Ninth Circuit clarified "[w]hen a plaintiff alleges unjust enrichment, a court may construe the cause of action as a quasi-contract claim seeking restitution." 783 F.3d 753, 762 (9th Cir. 2015). The court also instructed that such claims should not be dismissed "as duplicative of or superfluous to . . . other claims" because Rule 8(d)(2) allows a party to allege alternative forms of relief. *Id.* Defendants offered no reply in defense of their argument.

Based on the foregoing, the Court **DENIES** Defendants' motion for summary judgment on the unjust enrichment claim. However, because the parties agree that issue preclusion applies to the issue of short-swing profits, the Court finds, as an established fact not genuinely in dispute, that OC Kim engaged in unlawful short-swing profits as alleged

19

in this case and litigated in *Nossirah. See* Fed. R. Civ. P. 56(g) (In ruling on a motion for summary judgment, a court "may enter an order stating any material fact--including an item of damages or other relief--that is not genuinely in dispute and treating the fact as established in the case."). *See also* (Doc. Nos. 77 at 3 ("Principles of collateral estoppel also apply here"); 80 at 3 ("the doctrine of collateral estoppel (i.e., issue preclusion) applies").)

### E.    Damages

Finally, Defendant argue that Plaintiffs have failed to substantiate their claim to damages. The Court disagrees. Plaintiffs have marshalled evidence to support their allegations that Defendants' wrongful conduct resulted in $110 million in annual revenue loss; a $2.4 million class action settlement that Franklin will have to pay because it has no directors and officers liability insurance; approximately hundreds of thousands of out-of-pocket legal fees Franklin is paying for Defendants in this case; and shares awarded as a result of the approval of the 2020 Stock Option Plan. (Doc. No. 87 at 31.) Defendants cite no case law foreclosing Plaintiffs' damages claim. Rather, they primarily take issue with Plaintiffs' claim that Defendants' misconduct caused such damages.[9] That determination, however, is for the jury to make. Accordingly, the Court **DENIES** Defendants' motion for summary judgment on the issue of damages.

\* \* \*

Accordingly, for the foregoing reasons, the Court **DENIES** Defendants' motion for summary adjudication.

## III.    MOTION TO EXCLUDE PLAINTIFFS' EXPERT

Turning to Defendant's motion to exclude, Defendants seek to exclude Plaintiffs' expert, Mr. Benjamin P. Edwards ("Edwards"), arguing that his expert reports are

---

[9] Defendants also rehash their arguments that the battery issues were immaterial, and that OC Kim is protected by the business judgment rule—both which the Court found to concern genuine issues of fact for the jury to decide, and thus rejected as bases for summary judgment. *See supra* § II.B, C.

inadmissible legal opinions. The Court agrees.[10]

Federal Rules of Evidence 702 requires that expert opinion evidence "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). Generally, an opinion is not objectionable simply because it embraces an ultimate issue to be decided by the trier of fact. *See* Fed. R. Evid. 704(a); *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008). However, "an expert witness cannot give an opinion as to [his] legal conclusion, i.e., an opinion on an ultimate issue of law." *Nationwide Transp. Fin.*, 523 F.3d at 1058 (quoting *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir.2004)). Moreover, "instructing the jury as to the applicable law is the distinct and exclusive province of the court." *Id.*

Here, Edwards is a law professor at William S. Boyd School of Law. (Doc. No. 54-2 at 4.) He has taught classes in business organizations and securities at several schools, and currently teaches business organizations, which covers subjects, including limited liability companies, fiduciary duties, and conflict of interest transactions. (*Id.*) Edwards states that Plaintiffs' counsel engaged him "to provide [his] opinion as to potential liability under Nevada law based on the facts and circumstances alleged in Plaintiffs' complaints." (*Id.*) His reports contain a discussion of Nevada law as it pertains to shareholder derivative claims, the business judgment rule, and demand futility, followed by his analysis and conclusions as to each of those issues. (*Id.* at 12–18.)

Plaintiffs contend that Edwards' original and amended reports do not offer legal conclusions, but rather, permissibly compare Defendants' conduct to the applicable standard of care. The argument fails to persuade. Tellingly, Plaintiffs offer no pinpoint page citation to show where in Edwards' reports he opines about the standard of care, industry norms, or best practices that Defendants could have employed. And the Court finds none. Instead, Edwards' reports read like legal briefs—explaining the applicable law,

---

[10] To the extent Defendants challenge Edwards' reports on other grounds, such arguments are moot and therefore need not be considered.

21-cv-1837-AJB-MSB

applying the law to the facts, and concluding that there is sufficient evidence from which a jury could find that demand futility was established, and that Franklin's Board breached their fiduciary duties. (*Id.* at 17–18.)

Because Edwards' reports invade the province of the trial court to determine the law and contain opinions on ultimate issues of law, the Court finds them inadmissible. *See Nationwide Transp. Fin.*, 523 F.3d at 1058–59 (affirming district court's exclusion of law professor's expert report discussing the law and applying it to the case); *Pinal Creek Grp. v. Newmont Mining Corp.*, 352 F. Supp. 2d 1037, 1043 (D. Ariz. 2005) (collecting cases where courts "have held that expert testimony by lawyers, law professors, and others concerning legal issues is improper" and noting "the Ninth Circuit has also excluded legal expert testimony concerning both what the law is and how it should be applied to the facts of a case."). Accordingly, the Court **GRANTS** Defendants' motion to exclude Edwards.

//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//

22

**IV.   CONCLUSION**

For the reasons stated herein, the Court **DENIES** Defendants' motion for summary adjudication and **GRANTS** their motion to exclude Plaintiffs' expert. (Doc. Nos. 53, 54.) The Court **HEREBY RESETS** the parties' pretrial filing requirements, related deadlines, and hearing as follows.

- Counsel must comply with the pre-trial disclosure requirements of Fed. R. Civ. P. 26(a)(3) <u>no later than March 28, 2024</u>.

- The parties must meet and confer <u>no later than April 4, 2024</u>, and prepare a proposed pretrial order in the form as set forth in Civ. L. R. 16.1.f.6.

- Objections to pre-trial disclosures must be filed <u>no later than April 11, 2024</u>.

- The Proposed Final Pretrial Conference Order as described above must be prepared, served, and lodged <u>no later than May 2, 2024</u>.

- The final Pretrial Conference is scheduled for <u>May 9, 2024 at 2:00 p.m.</u>

**IT IS SO ORDERED**.

Dated:  March 18, 2024

Hon. Anthony J. Battaglia
United States District Judge

21-cv-1837-AJB-MSB